63 So.2d 290

## BUSBEE v. STATE.

### 5 Div. 406.

Court of Appeals of Alabama.
Jan. 20, 1953.

Rehearing Denied Feb. 10, 1953.

D. T. Ware, Roanoke, for appellant.

Si Garrett, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant's jury trial under an indictment charging him with murder in the second degree resulted in a verdict of guilty as charged in the indictment. Judgment was entered pursuant to the verdict.

The evidence introduced in the trial below tends to show that the deceased, Willie B. Walker, was a son-in-law of appellant. The deceased and his wife had been living in appellant's home. The relationship between the two men had been strained. In fact earlier on the night of the killing they had argued and threats were exchanged. The appellant demanded that Walker leave his home, which he did.

A short time after Walker had left appellant and other members of the family were summoned to the home of another of appellant's daughters because of the serious illness of this second daughter.

It was decided to take this second daughter to a hospital, and on the way to the hospital the family stopped at appellant's home. The deceased also had returned.

A car containing appellant's wife and daughter (deceased's wife) arrived first at appellant's home on the return trip. The daughter entered the house and soon came out again on her way to a car. The deceased stopped her and they talked momen-

tarily when the woman got into the car to leave.

As this car was backing out the appellant arrived at his home in an automobile driven by R. T. Lewis, and accompanied by three other friends.

The appellant stepped from the Lewis car carrying a shotgun. Walker, the deceased, was then seen walking toward the road from the direction of the house. As he approached the edge of the road (and appellant's then position) appellant fired the gun at him, inflicting a wound from which Walker died about a week later.

The appellant contended that when he shot the deceased was advancing rapidly on him with a large knife which he could see by the light reflected from the house and from the lights of a parked automobile, and that at the time he fired the deceased was so close upon him he had to fire the gun from his hip.

The evidence seems clear that the shooting took place in the yard of appellant's home. This yard was small, having a depth of about thirty feet.

The appellant's wife testified that deceased had stated to her just before the shooting that he was going to kill appellant, or get killed.

It is our conclusion that the verdict of the jury was authorized under the evidence presented by the State. The State's evidence tended to establish to the degree required all of the elements of murder in the second degree. These constituents have so often been written to that reiteration of them would serve no useful purpose. The trial court therefore did not err in overruling appellant's motion for a new trial because the evidence was insufficient to support the verdict.

It appears that although several witnesses were in the immediate area at the time none of them observed the actual shooting, and none of the witnesses saw a knife in deceased's hand, other than appellant.

It is our conclusion however that this cause must be reversed because of certain rulings of the court during the testimony of appellant's witness Owen Frost.

Mr. Frost, a teacher in the Tallapoosa County schools lived about 200 yards distance from appellant.

Upon hearing of the shooting he went to the locus of the offense "early" the next morning, the shooting having occurred between eleven P.M. and midnight the preceding night. There he made an examination of the scene. Mr. Frost testified in detail as to certain distances, etc.

He was then asked two questions as to the location of certain blood spots observed by him. The State's objections were sustained to these questions. However no exceptions were reserved to these rulings. Nothing is presented therefore for our review in these instances.

Further questions were propounded to this witness seeking to elicit testimony as to whether he found a large knife there during his examination of the locus. The State's objections were sustained to these questions also, and exceptions were these times reserved to the court's rulings.

Upon later recall of Mr. Frost counsel for appellant again sought to elicit testimony as to the finding of a weapon by Mr. Frost on this occasion. In this connection the record shows the following:

"Q. Did you find any weapon?

"Mr. Boyd: We object, if the court please.

"The Court: That was ruled out this morning, and the court has sustained the objection to the same question as to what he found the next morning.

"Mr. Ware: We expect the testimony to show he found a knife and connect it up and identify it.

"Mr. Boyd: And Milt Busbee might have put the knife there.

"The Court: Sustain the objection. Too far removed from the difficulty, not a part of the res gestae, and not shown to be in the same condition as it was when the difficulty occurred.

"Mr. Ware: We can prove it if we get a chance—by the parties that had seen this man with the knife—

"The Court: Then I would sustain the objection.

"Mr. Ware: We reserve it. Come away."

 In Madley v. State, 192 Ala. 5, 68 So. 864, a prosecution for homicide, it is stated, in reference to testimony as to objects found at or near the scene of the crime: "Evidence as to the scene of the crime is always admissible on the trial of offenses like the one in question." We think that the broad rule therein stated must undoubtedly be limited by requirements of reasonable proximity as to time of finding and location of the objects.

In the present case Mr. Frost visited the scene "early" in the morning following the commission of the offense late the night before, that is within some five to eight hours.

In Holland v. State, 24 Ala.App. 199, 132 So. 601, it was held that testimony as to objects found at the scene "the day following the night of the difficulty" was not too remote in point of time, and, was properly admitted; to the same effect is Allbritton v. State, 29 Ala.App. 1, 191 So. 268, where the objects were found the next day, the body having been first found "about dark" on the preceding day; and Dodd v. State, 32 Ala.App. 504, 27 So.2d 259, where the objects were observed at the scene of the homicide on the afternoon of the day following the offense.

Nor was the evidence sought to be elicited from the witness Frost inadmissible because no showing was first made that the locus was in the same condition at the time of his visit as it was at the time of the shooting. Harris v. State, 8 Ala.App. 33, 62 So. 477; Eden v. State, 24 Ala.App. 37, 129 So. 797; Coats v. State, 253 Ala. 290, 45 So.2d 35.

The materiality and relevancy of the evidence sought by the questions to the issues of this case, and to which objections were sustained, is obvious when it is recalled that the appellant was the only witness, of the several testifying, who testified that deceased was approaching him with a knife when he shot. Clearly the tendencies of evidence sought was highly corroborative of appellant's testimony in regard to the knife, and appellant was entitled to have such evidence presented to the jury.

Because of the court's ruling in the premises this cause must be reversed.

Reversed and remanded.