The appellant, Little Zollie Banks, was convicted of the murder of Morris Trimble, § 13A-6-2, Code of Alabama 1975; the attempted murder of Ricky Hicks, § 13A-4-2, Code of Alabama 1975; and reckless endangerment, § 13A-6-24, Code of Alabama 1975. He was sentenced to 40 years' imprisonment on the murder conviction, 20 years' imprisonment on the attempted murder conviction, (both sentences to be served consecutively), and 12 months' imprisonment on the reckless endangerment convictions (to be served concurrently *Page 48 
with the sentences on the other two convictions).
The state's evidence tended to show that on the night of January 9, 1992, at approximately 11:25 p.m., Ricky Hicks was shot in the leg as he ran away from several men who had confronted him with guns and demanded to know what he had done with their "dope" and money. Hicks testified that he ran towards Dorothy Roberts's house to get away. He said that as he neared the house, a bullet struck him in the leg. Hicks testified that he went inside Roberts's house and stayed there for a short time, until the shooting stopped. He then went to Jessie Moss's house. Moss took Hicks to Hicks's sister's house and she took him to the hospital. Hicks later identified Timothy Wright and Ervin Payne as two of his assailants. He testified that several other men were also involved in the shooting.
Dorothy Roberts testified that Morris Trimble, Benita Roberts, Bobby Lee Ponds, and Marie Wycoff were at her house when the shooting occurred. She said that they heard several shots coming from the direction of Sam's Quick Stop convenience store. Roberts testified that they heard glass breaking and bullets hitting the tin roof on her house. Roberts said that after Ricky Hicks left her house, she looked into a bedroom where Morris Trimble had been during the shooting. She said, "He was laying in a big puddle of blood." One of the bullets had struck Trimble under his left eye. James Laridson, a state medical examiner, testified that Trimble died as a result of this gunshot wound.
The appellant's sister, Katie Banks, testified that he came by her house about 10:00 p.m. on the night of the shooting. She testified that the appellant was with Ervin Moore, Ervin Payne, and several other men. The appellant told his sister he was leaving with the men. Chris Lockhart testified that he saw the appellant with these men at Katie Banks's apartment complex.
Timothy Wright, who pleaded guilty to assault in the second degree in connection with this case, testified that on the night of the shooting he drove Ervin Moore, Ervin Payne, Brian Wallace, and the appellant to the appellant's car, where they got a 12-gauge shotgun. They had other weapons in their vehicle. The five men then went to Sam's Quick Stop in Camp Hill, Alabama. Ervin Moore got out of the car first and pointed the gun at Hicks, who was standing under a streetlight in the parking lot of the Quick Stop. The appellant, Moore, and Payne shot at Hicks as he ran down the road.
Alan Elkins of the Opelika Police Department testified that he received a transmission over the radio describing the vehicle involved and describing the occupants of the vehicle. Officer Elkins saw a vehicle matching the description occupied by several black males wearing baseball caps. After backup officers arrived, Elkins stopped the car. The occupants — Ervin Payne, Ervin Moore, Timothy Wright, Brian Wallace, and the appellant — were taken into custody.
Agent Perry Beasley of the Alabama Bureau of Investigation testified that four guns were found in the vehicle including a 12-gauge shotgun, a .380 automatic weapon, and a Tec 9 mm automatic weapon. Investigator David Berry of the Tallapoosa County Sheriff's Office testified that empty 9 mm and .380 cartridges were found, along with empty 12-gauge shotgun shells, near Sam's Quick Stop. He further testified buckshot pellets were found in and around Roberts's house. Brent Wheeler, a forensic scientist with the Alabama Department of Forensic Sciences in Huntsville testified that the expended shells and cartridges found at the crime scene had been fired from the confiscated weapons.
The appellant presents four issues for appellate review.
 I
First, the appellant contends that the state failed to offer sufficient evidence to corroborate accomplice Timothy Wright's testimony, as required by § 12-21-222, Code of Alabama 1975. Section 12-21-222, Code of Alabama 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of *Page 49 
the offense or the circumstances thereof, is not sufficient."
Timothy Wright was indicted for the same offenses as the appellant and pleaded guilty to assault in the second degree. Therefore, there is no denying that he was the appellant's accomplice. See Williams v. State, 497 So.2d 595 (Ala.Cr.App. 1986).
The test for determining whether there is sufficient corroboration of an accomplice's testimony is a subtraction process. Senn v. State, 344 So.2d 192, 193 (Ala. 1977).
 " 'First, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. . . .' "
McCoy v. State, 397 So.2d 577, 585 (Ala.Cr.App.), cert. denied,397 So.2d 589 (Ala. 1981) (citations omitted; emphasis in original).
 " ' "[C]orroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone."
 " 'Mills v. State, 408 So.2d [187] at 191 [(Ala.Cr.App. 1981)].
 " ' "The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, § 746." '
 "Colvette [v. State, 568], So.2d [319] at 321-22 [(Ala.Cr.App. 1991)], quoting Moore v. State, 30 Ala. App. 304, 307, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942).
 " 'Corroborate' is defined as to 'strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence.' Black's Law Dictionary 344 (6th ed. 1990). The evidence presented in corroboration does not have to be enough standing alone to result in a conviction. The corroborating evidence need not be 'strong.' Andrews v. State, 370 So.2d 320, 322
(Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979). See also Reed v. State, 407 So.2d 153
(Ala.Cr.App. 1980), rev'd on other grounds, 407 So.2d 162 (Ala. 1981).
 "Section 12-21-222, '[d]oes not require corroborative testimony as to material elements of the crime. . . .' Ex parte Bell, 475 So.2d 609, 613 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), but, the corroborative evidence must 'tend to connect the defendant with the commission of the crime.' § 12-21-222, Code of Alabama 1975. 'The corroboration of an accomplice may be shown by circumstantial evidence.' Kuenzel v. State, 577 So.2d 474, 515 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
 " ' "The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. . . .
 "' "In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration." '
 "Glasco v. State, 513 So.2d 54, 57 (Ala.Cr.App.), cert. denied, 513 So.2d 61 (Ala. 1987), quoting Ware v. State, 409 So.2d 886 (Ala.Cr.App. 1981), writ quashed, 409 So.2d 893 (Ala. 1982). (Emphasis supplied [in Chevere].) (Citations omitted.) The accused's proximity to the crime is a relevant consideration when determining whether sufficient corroboration of the accomplice's testimony exists. Andrews, supra. However, the accused's proximity itself, in most cases, is not enough evidence for corroboration. 'If, however, the accused is in close proximity to the crime and there is other evidence indicating guilt, such a combination of evidence is sufficient to corroborate *Page 50 
the testimony of an accomplice.' C. Gamble, McElroy's Alabama Evidence § 300.01(14) (4th ed. 1991)."
Chevere v. State, 607 So.2d 361, 365-66 (Ala.Cr.App. 1992).
In this case the corroborating testimony was as follows: Katie Banks testified that the appellant left her apartment with Ervin Moore and Ervin Payne just before the shootings. Chris Lockhart testified that he saw the appellant with Ervin Moore, Ervin Payne, and Timothy Wright. Hicks positively identified Ervin Payne and Timothy Wright as two of the people who had shot him. Hicks testified that there were two other men who got out of exited the vehicle and shot at him. Approximately one hour after the incident, Officer Elkins stopped the vehicle. The appellant, Timothy Wright, Ervin Payne, Ervin Moore, and Brian Wallace were in the automobile. Four guns were found in the automobile, (a 12-gauge shotgun, a .380 automatic weapon, and a 9 mm automatic weapon) and there was evidence that those guns fired the empty rounds found in the parking lot of the Quick Stop and the bullets found in Dorothy Roberts's house. This was sufficient corroborative evidence to let this case go to the jury.
 II
The appellant next contends that it was error for the trial court to refuse to allow defense counsel to elicit testimony from David Lashley, an investigator with the Alabama Bureau of Investigations regarding what an eyewitness, John Burton, had told him. During defense counsel's cross-examination of Lashley, the court sustained the state's objection to testimony as to what Burton had told Lashley during his investigation. Defense counsel was allowed to make an offer of proof, outside the jury's presence, concerning what Burton had told Officer Lashley. Defense counsel stated that Officer Lashley would testify that Burton had positively identified Timothy Wright as the driver of the car and as one of the gunmen in this incident.
The appellant argues that Investigator Lashley's testimony regarding Burton's statement should have been received into evidence under the identity exception to the hearsay rule and cites as authority C. Gamble, McElroy's Alabama Evidence, § 273.01 (4th ed. 1991). This section states:
 "A statement which is useful in identifying a person, time, place or other thing is admissible for that purpose and, therefore, is not hearsay. The statement of course, may not be considered as evidence of the truth of the matter asserted but only for the limited purpose of identification."
(Emphasis added; footnote omitted).
However, evidence that Timothy Wright was the driver of the car and that he was involved in the crime had already been introduced. In fact, he testified at trial that he was the driver of the car and that he was involved in the shooting. To exclude this additional testimony was not reversible error because it was cumulative of other evidence already before the court. See Davidson v. State, 591 So.2d 901 (Ala.Cr.App. 1991).
Furthermore, such testimony was classic hearsay and was offered only to prove the truth of the matter asserted.
 III
The appellant next argues that the trial court erred in denying his motion for a continuance without allowing him to make an offer of proof as to the testimony of John Burton, an absent eyewitness. The appellant attempted for the second time to make an offer of proof regarding John Burton's testimony.
The appellant's first attempt at an offer of proof was when he tried to elicit hearsay testimony from Investigator Lashley (see part I of this opinion). The following exchange took place on that issue:
 "Davis Whittelsey [defense counsel]: Your Honor, I would make an offer of proof relative to John B. Burton, who is unavailable. I would expect that if he were present, his testimony would be to the effect —
 "Court: Now, that is not the offer of proof. The offer of proof is, what do you expect this witness who is sitting on the stand here to testify in regard to what he heard *Page 51 
John Burton say, if I would allow him to do that, which I am not going to do.
 "Davis Whittelsey: Well, your Honor, couldn't I also, as I understand the rules of procedure, make an offer of proof for an absent witness that is material, what I would expect him to say if he were present and present that to the jury as if I were testifying as John Burton?
"Court: No sir.
 "Davis Whittelsey: I would still ask this court to allow me to —
 "Court: I am not going to do it and it's overruled. And I want to furthermore say for the record and inquire: Did you subpoena John Burton as a witness?
"Davis Whittelsey: No, your Honor.
 "Court: Did you move for a continuance because of the absence of a material witness?
 "Davis Whittelsey: Have not because he can't be found, your Honor. Significant efforts have been made to find John Burton and he cannot be found."
On the next day of trial the appellant attempted to make another offer of proof regarding John Burton's testimony if he were available. At this time he moved for a continuance.
 "Davis Whittelsey: . . . [E]arlier in the trial of this case we talked about the testimony of John Burton and you asked me whether or not I had subpoenaed him, and I replied, 'No.' I was in error, I have subpoenaed John Burton. I've got a copy of the subpoena in my file. I talked to a deputy and I understand that he attempted to serve John Burton with the address I have, and they have traced him down to Atlanta, that he is outside the subpoena power of the State of Alabama. So I attempted to subpoena and have John Burton here. I would request that the court allow me to make an offer of proof as to what I would expect John Burton's testimony to be in that he is absent and I cannot get him subpoenaed and he is outside the subpoena power of the State of Alabama.
"Court: Denied.
"Davis Whittelsey: I respectfully except.
 "Court: I also inquired as to whether you asked for a continuance to give an opportunity to get a material witness and you didn't. Now we've proceeded all the way through this trial.
"Davis Whittelsey: I move for a continuance.
"Court: You can't get one now."
The Alabama Supreme Court has stated:
 "A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence."
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986) (citations omitted).
The appellant did not make, or attempt to make, a showing that Burton would be available for trial if the continuance were granted. Neither did the appellant demonstrate that he had exercised due diligence to secure Burton's presence at trial. "The judicial system has a fundamental duty to protect its own functioning. We must balance the right of the defendant to obtain a fair trial with the right of the general public to have its business dispatched efficiently."Smith v. State, 623 So.2d 369, 375 (Ala.Cr.App. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993). In this case, the appellant did not request a continuance until the last day of trial. The appellant did not show that he had exercised due diligence in securing Burton's presence. The probability that Mr. Burton would testify in the event of a continuance was remote at best, because he was outside the subpoena power of the court. We hold that the trial court did not abuse its discretion in denying appellant's request for a continuance. *Page 52 
 IV
Last, the appellant contends that the trial court erred in receiving into evidence a gun that was not used in the shooting. Specifically, he argues that the gun or any testimony regarding the gun was not relevant to the crime charged.
The rifle in question was found in the trunk of the car occupied by the appellant at the time of appellant's arrest. It was relevant as tending to infer that the appellant was present at the time of the shootings. The testimony of Timothy Wright that the appellant stated he wanted to go to "Powder Town" and rob some dope dealers tended to strengthen the state's theory that getting this gun was a continuation of their criminal activity. Additionally, this is classic res gestae evidence.
Evidence is relevant if it has probative value, regardless of how slight, upon a matter in issue. Newsome v. State,570 So.2d 703 (Ala.Cr.App. 1989). The determination of whether evidence is relevant rests within the sound discretion of the trial court and that determination will not be disturbed on appeal unless the trial court clearly abused its discretion.Peeples v. State, 601 So.2d 186 (Ala.Cr.App. 1992). The gun was correctly received into evidence.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.