[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 977 
The appellant, Jason Daniel Burell, was convicted of burglary in the first degree, a violation of § 13A-7-5, Code of Alabama 1975. He was sentenced to 10 years' imprisonment.
 I
The appellant first contends that the trial court erred in denying the appellant's motion for a judgment of acquittal. He alleges that the prosecution failed to present a prima facie case of burglary because, he says, it did not prove that the appellant went inside the residence that was burglarized or acted in concert with someone who did. The appellant also alleges that the prosecution did not prove that the appellant intended to commit a crime.
 "In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust. Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985)."
Powe v. State, 597 So.2d 721, 724 (Ala. 1992).
The state presented sufficient evidence to prove a prima facie case of burglary. The record shows that the owner of the *Page 978 
burglarized residence testified that he had known the appellant for about three months before the burglary. He also testified that he recognized a grey Pontiac automobile parked in a neighbor's driveway as one customarily driven by the appellant and his brother. He testified that when he returned to his house the day of the burglary he saw the back screen door closing and saw the appellant running across his backyard. When he went inside, another person who was in the house hit him in the face and then ran from the house in the same direction as he had seen the appellant run. The owner testified that he found a duffel bag apparently left by the burglars on the floor of his house and that that bag was filled with his property.
 " 'The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199
(Ala.Cr.App. 1983).' "
Ennis v. State, 671 So.2d 142, 144 (Ala.Cr.App. 1995), quotingBreckenridge v. State, 628 So.2d 1012, 1018 (Ala.Cr.App. 1993).
The state also satisfied its burden of showing that the appellant intended to commit burglary.
 "While intent is an important and indispensable element of burglary in the first degree, it is also the law that the jury may reasonably infer necessary intent to steal or commit a felony from the mere presence of the accused under circumstances showing breaking and entering."
Gaskin v. State, 53 Ala. App. 64, 297 So.2d 388, 390
(Ala.Cr.App. 1974), cert. denied, 292 Ala. 721, 297 So.2d 391
(1974).
There was sufficient evidence from which the jury could find that the appellant was in the house or that he knew the other individual was in the house, and thereby was an accomplice, and that the appellant and this other individual had entered the house with an intent to commit a crime. The trial court did not err in denying the appellant's motion for a judgment of acquittal.
 II
The appellant next contends that the trial court erred in receiving into evidence a duffel bag found on the floor of the house where the burglary occurred. The appellant asserts that because no evidence was presented that directly connected the duffel bag to the appellant, it was not relevant to the prosecution's case and should not have been received into evidence. The duffel bag, which the owner of the house testified did not belong to him, was found in his house filled with his property. The bag was found immediately after the burglars had run out the back door.
As this court held in Banks v. State, 647 So.2d 46
(Ala.Cr.App. 1994):
 "Evidence is relevant if it has probative value, regardless of how slight, upon a matter in issue. Newsome v. State, 570 So.2d 703 (Ala.Cr.App. 1989). The determination of whether evidence is relevant rests within the sound discretion of the trial court and that determination will not be disturbed on appeal unless the trial court clearly abused its discretion. Peeples v. State, 601 So.2d 186
(Ala.Cr.App. 1992)."
647 So.2d at 52. The duffel bag was relevant because it tended to show the intent to commit a crime within the house.
As this court further stated in Land v. State, 678 So.2d 201,210 (Ala.Cr.App. 1995) (quoting Parker v. State, 587 So.2d 1072,1090 (Ala.Cr.App. 1991):
 " 'Evidence as to objects found at or near the scene of the crime charged within a reasonable time and proximity after the commission of the crime is "always admissible." Busbee v. State, 36 Ala. App. 701, 703, 63 So.2d 290, 292 (1953).' "
The trial court did not err in allowing the duffel bag to be received into evidence. *Page 979 
 III
The appellant also asserts that the trial court erred in denying the appellant's motion for a mistrial based on juror misconduct. He alleges two specific instances of juror misconduct. First, he alleges that one juror read a copy of theTuscaloosa News during the course of the trial that contained an article on the case. The record shows that when this juror was questioned by the court, she acknowledged she had scanned the newspaper but said she did not read anything in it that concerned the appellant's case.
 " 'Whether vel non the reading of a newspaper article has influenced the jury to the detriment of appellant is a question to be determined by the trial court in the exercise of its sound discretion.' Williams v. State, 410 So.2d 911, 913
(Ala.Cr.App. 1982). Even when jurors read newspaper accounts of the case, a verdict will not be disturbed if the trial court determines that none of the jurors was affected by the article. Wiggins v. State, 429 So.2d 666 (Ala.Cr.App. 1983); Flowers v. State, 402 So.2d 1118 (Ala.Cr.App. 1981)."
Robinson v. State, 577 So.2d 928, 931 (Ala.Cr.App. 1990).
The appellant's second allegation of juror misconduct stems from the fact that one juror notified the court that six years earlier he had known the appellant's brother, Jody Burell, socially. This happened on the third day of the trial. This juror, however, testified that he came forward as soon as he realized Jody Burell's connection to the appellant. Nothing in the record indicates that the prospective jurors were questioned during voir dire about whether they knew Jody Burell. As this court stated in Marshall v. State,668 So.2d 891, 894 (Ala.Cr.App. 1995):
 " ' "Unless a juror is asked a question which applies to him in a manner demanding response, it is permissible for a juror to remain silent; the juror is under no duty to disclose." '
 "Green v. State, 591 So.2d 576, 579
(Ala.Cr.App. 1991) (quoting Parish v. State, 480 So.2d 29, 30 (Ala.Cr.App. 1985))."
When questioned by the court, this juror testified that his ability to be fair and impartial would not be affected by his prior acquaintance with the appellant's brother.
 " 'A motion for mistrial "is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300
(1986). In cases involving juror misconduct, a trial court generally will not be held to have abused its discretion "where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of the appellant were not prejudiced by the remark." Bascom v. State, 344 So.2d 218, 222
(Ala.Cr.App. 1977).' "
Riddle v. State, 661 So.2d 274, 276 (Ala.Cr.App. 1994).
The court did not abuse its discretion in denying the appellant's motion for a mistrial.
 IV
The appellant next asserts that the trial court erred in failing to grant a mistrial when the state questioned defense witness Charles Pierce about his advice to the appellant not to answer the questions posed by the police without having an attorney present. The record shows the following remarks were made on cross-examination:
 "Q. [Prosecutor:] Okay. If I understand what you said on direct — that you told Jason to cooperate, that he didn't have anything to hide.
 "A. [Pierce:] That was a basic statement in the conversation that we had.
 "Q. Now do you remember being present with Jason and this Investigator Andy Liles (indicating)?
"A. Excuse me? Where, sir?
"Q. At your house.
 "A. Yes, sir. I remember Mr. Liles coming to my home.
 "Q. And your advice then wasn't to be cooperative; was it? *Page 980 
 "A. Well my advice to Jason was that he — I advised him to the law which states that he doesn't have to answer any questions or any interrogation without the presence of a lawyer.
 "Q. Which is, of course, true. But that's not being cooperative on your part; is it?"
Under Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240,49 L.Ed.2d 91 (1976), the prosecution may not use the post-arrest, post-Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), silence of a defendant as evidence of his guilt.
 ". . . [W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."
Doyle, 426 U.S. at 618, 96 S.Ct. at 2245.
This line of questioning by the prosecutor was elicited to rebut the witness's testimony that the appellant cooperated with police. In McMillan v. Gomez, 19 F.3d 465 (9th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 170, 130 L.Ed.2d 107
(1994), the Court of Appeals for the Ninth Circuit held that it was appropriate for the prosecutor to question a witness about the defendant's silence because that testimony was used to impeach the defendant's testimony that he had been cooperative with police. "On cross-examination of Reynolds, McMillan's counsel had sought to give the impression that McMillan was cooperative with the police. It was proper for the prosecution to refute this impression by asking about his later noncooperation." McMillan, 19 F.3d at 469.
If the prosecution may question a witness about the defendant's silence in order to impeach the defendant's testimony, then surely it is permissible to question the witness on the defendant's silence to impeach the witness's own testimony. The court did not err in refusing to grant a mistrial.
 V
The appellant last asserts that the trial court erred in allowing the terms "companionship" and "positive testimony" to be used in the jury instructions without additional clarification. The terms "companionship" and "positive testimony" originate from a line of cases which defined the law of aiding and abetting. See Dailey v. State, 604 So.2d 436, 438
(Ala.Cr.App. 1992); Henry v. State, 555 So.2d 768, 769
(Ala.Cr.App. 1989). The jury instructions given by the court were an accurate statement of the law and reflected the facts in this case. Ready v. State, 574 So.2d 894, 905
(Ala.Cr.App. 1990). No error occurred here.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.